FILED
10-19-2026
Clerk of Circuit Court
Manitowoc County, WI
2026CV000471

| STATE OF WISCONSIN | CIRCUIT COURT | MANITOWOC COUNTY |
|---|---|---|

BANK FIRST, N.A., successor by merger to
HOMETOWN BANK,
402 North 8th Street
Manitowoc, Wisconsin 54220

Plaintiff,

v.

Case No._________

INTERBANK,
4255 Camp Bowie Boulevard
Fort Worth, Texas 76107,

Defendant.

# SUMMONS

THE STATE OF WISCONSIN

To each person named above as a defendant:

You are hereby notified that the plaintiff named above has filed a lawsuit or other legal action against you. The complaint, which is attached, states the nature and basis of the legal action.

Within 20 days of receiving this summons, you must respond with a written answer, as that term is used in Chapter 802 of the Wis. Stat., to the complaint. The Court may reject or disregard an answer that does not follow the requirements of the statutes.

The answer must be sent or delivered to the Court, whose address is Manitowoc County Clerk of Court, 1010 S 8th Street #105, Manitowoc, WI 54220, and to Axley LLP, plaintiff's attorneys, whose address is 2 East Mifflin Street, Suite 200, Post Office Box 1767, Madison, WI 53701-1767. You may have an attorney help or represent you.

If you do not provide a proper answer within 20 days, the Court may grant judgment against you for the award of money or other legal action requested in the complaint, and you may lose your



EXHIBIT 1

right to object to anything that is or may be incorrect in the complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future and may also be enforced by garnishment or seizure of property.

Dated this 19th day of October, 2026.

AXLEY LLP

*Electronically signed by David M. Pelletier*
David M. Pelletier
State Bar #1072343
Attorneys for Plaintiff
2 East Mifflin Street
Post Office Box 1767
Madison, Wisconsin 53701-1767
(608) 260-2495
dpelletier@axley.com

FILED
10-19-2026
Clerk of Circuit Court
Manitowoc County, WI
2026CV000471

| STATE OF WISCONSIN | CIRCUIT COURT | MANITOWOC COUNTY |
|---|---|---|

BANK FIRST, N.A., successor by merger to
HOMETOWN BANK,
402 North 8th Street
Manitowoc, Wisconsin 54220

Plaintiff,

v.

Case No.__________

INTERBANK,
4255 Camp Bowie Boulevard
Fort Worth, Texas 76107,

Defendant.

COMPLAINT

## I. PRELIMINARY STATEMENT

Plaintiff Bank First, N.A., by its attorneys, Axley LLP, for its Complaint against Defendant InterBank, alleges as follows:

1. Plaintiff Bank First, N.A. ("**Bank First**"), successor by merger to Hometown Bank, brings this action against Defendant InterBank ("**InterBank**") for InterBank's breach of two loan participation agreements under which Bank First holds substantial participation interests in two commercial loans that InterBank originated, holds, and services.

2. Bank First purchased its participation interests in reliance on two express contractual protections. First, InterBank promised that it would service and collect the loans using the same degree of care that it would use for its own accounts. Second, InterBank promised that it would not renew, extend, or adversely revise the loan documents, extend the maturity or payment

dates of the loans, or waive defaults and claims against the borrower, without Bank First's written consent. InterBank has broken both promises.

3. The loans matured on July 30, 2025. The borrower did not pay. Rather than enforce its loan documents, InterBank entered into successive forbearance agreements with the borrower, the second of which expired on January 31, 2026. For more than eight months thereafter, the loans sat matured, in default, and wholly undocumented: there was no operative forbearance agreement, no restructured note, no judgment, no foreclosure, and no enforcement action of any kind, while the borrower made only sporadic interest payments and accrued unpaid interest continued to mount.

4. Then, on October 8, 2026, InterBank executed a Third Forbearance Agreement with the borrower and its guarantor under which InterBank agreed to suspend all collection activity for an additional thirteen months, through October 7, 2027. InterBank did so without Bank First's consent, over Bank First's objection, and contrary to the parties' established practice of InterBank seeking Bank First's approval before entering into forbearance agreements. InterBank disclosed the executed agreement to Bank First by letter dated October 14, 2026—after the fact—asserting that the participation agreements authorize InterBank "to make all decisions concerning the servicing of the Loans." They do not. Both participation agreements expressly condition extensions, deferrals, and waivers on Bank First's written consent.

5. If given effect, the Third Forbearance Agreement will leave the loans unenforced for more than twenty-six months after their maturity, during which Bank First will be expected to bear its pro rata share of InterBank's expenses and of the continued deterioration of the collateral and the borrower's creditworthiness. Bank First's pro rata share of the outstanding indebtedness on the loans amounts to several million dollars.

6. Bank First brings this action to recover its damages; to obtain a declaration that the Third Forbearance Agreement was executed in breach of the participation agreements and does not bind Bank First or its participation interests; to obtain a full accounting, and; to seek all damages available under contract and at law.

## II. PARTIES

7. Plaintiff Bank First, N.A. is a national banking association with its principal place of business at 402 North 8th Street, Manitowoc, Wisconsin. On February 10, 2023, Bank First Corporation completed its merger with Hometown Bancorp, Ltd., and Hometown Bank, a Wisconsin state bank ("**Hometown Bank**"), merged with and into Bank First, N.A. Bank First is the successor in interest to Hometown Bank with respect to each of the participation interests described below.

8. Defendant InterBank is an Oklahoma state banking corporation doing business in Texas, with offices at 4255 Camp Bowie Boulevard, Fort Worth, Texas 76107. InterBank is the originating lender, holder, and servicer of the loans at issue.

## III. JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to Article VII, Section 8 of the Wisconsin Constitution and Wis. Stat. § 753.03. The amount in controversy exceeds the jurisdictional minimum of this Court.

10. This Court has personal jurisdiction over InterBank pursuant to Wis. Stat. § 801.05(1)(d), in that InterBank is engaged in substantial and not isolated activities within the State of Wisconsin, and pursuant to Wis. Stat. § 801.05(5), in that this action arises out of promises made by InterBank to a Wisconsin bank to render services within this state and out of InterBank's continuing obligations to remit funds and deliver information to a Wisconsin bank.

11. InterBank's contacts with Wisconsin are substantial, purposeful, and continuing. InterBank twice solicited and sold participation interests in the Loans (defined below) to Hometown Bank, a Wisconsin state bank with its principal place of business in Fond du Lac, Wisconsin. The borrower entities to which InterBank extended the Loans, WI Texas Frac LLC and WI Texas Frac Real Estate LLC (collectively, the "**Borrower Parties**"), are each Wisconsin limited liability companies organized under the laws of this state, and their manager and guarantor, Patrick J. McConnell, resides in Green Lake, Wisconsin. InterBank perfected its security interest in personal property Collateral by filing UCC financing statements in Wisconsin. For nearly a decade, InterBank has remitted loan payments to, corresponded with, and delivered loan information to Hometown Bank and Bank First in Wisconsin.

12. Venue is proper in Manitowoc County pursuant to Wis. Stat. § 801.50(2), in that Manitowoc County is the county in which Bank First resides and maintains its principal place of business and is the county in which InterBank's obligations to remit funds and deliver information to Bank First were to be performed.

## IV. FACTUAL BACKGROUND

### A. The Loans

13. On January 31, 2017, InterBank extended a construction loan to the Borrower Parties evidenced by a Promissory Note dated January 31, 2017 (the "**First Note**"), and governed by a Construction Loan Agreement of the same date (the "**Loan Agreement**").

14. On January 31, 2021, InterBank extended a second loan to the Borrower Parties evidenced by a Promissory Note dated January 31, 2021 (the "**Second Note**"). The First Note and the Second Note are referred to collectively as the "**Loans**."

15. The Loans are secured by, among other things, a Deed of Trust, Security Agreement, Financing Statement, and Assignment of Rents dated January 31, 2017, executed by WI Texas Frac Real Estate LLC for the benefit of InterBank and recorded in the Official Public Records of Montague County and Cooke County, Texas, which granted InterBank a lien on real property located in Texas, and by a Security Agreement dated January 31, 2017, which granted InterBank a security interest in personal property of the Borrower Parties (collectively, the "**Collateral**").

16. The Loans are guaranteed by Patrick J. McConnell ("**Guarantor**"), an individual, pursuant to a Guaranty Agreement dated January 31, 2017, and a Guaranty Agreement dated January 31, 2021 (collectively, the "**Guaranties**").

17. The First Note, the Second Note, the Loan Agreement, the Deed of Trust, the Security Agreement, the Guaranties, and the other documents evidencing, securing, or guaranteeing the Loans are referred to collectively as the "**Loan Documents**." The Loan Documents have been modified by five successive Loan Modification Agreements dated effective March 30, 2020, July 31, 2020, January 31, 2021, April 30, 2021, and May 28, 2022. As so modified, the Loans matured on July 30, 2025.

**B. <u>Bank First's Participation Interests</u>**

18. On or about March 21, 2017, InterBank and Hometown Bank entered into that certain Participation Certificate and Agreement dated as of March 21, 2017, whereby InterBank sold to Hometown Bank an undivided sixteen percent (16.00%) participation interest in the loan evidenced by the First Note (the "**2017 Participation Agreement**"). The 2017 Participation Agreement provides that Bank First's participation interest "shall have equal priority to Seller's interest in the Loan," and that Bank First holds a pro rata interest in the Collateral.

19. On or about January 31, 2021, InterBank and Hometown Bank entered into that certain Participation Agreement dated January 31, 2021, whereby InterBank sold to Hometown Bank an undivided fifty percent (50%) participation interest in the loan evidenced by the Second Note and the related Loan Documents (the "**2021 Participation Agreement**" and, together with the 2017 Participation Agreement, the "**Participation Agreements**"). The 2021 Participation Agreement provides that the parties intend the transaction to be a sale and not a loan, that the relationship between InterBank and Bank First is that of a seller and buyer of a property interest, and that Bank First's participating interest has the same priority as, and is not subordinated to, InterBank's interest in the Loan.

20. Bank First paid the full purchase price for each of its participation interests (collectively, the "**Participation Interests**"). InterBank retained an 84% interest in the First Note and a 50% interest in the Second Note.

**C. InterBank's Servicing Obligations and the Limits on Its Authority Under the 2017 Participation Agreement**

21. Section 6 of the 2017 Participation Agreement provides that InterBank "shall service the Loan, including making Collections and disbursements as provided herein," shall hold all Loan Documents and maintain records pertaining to the Loan, and, "[e]xcept as expressly set forth herein," shall make decisions concerning the servicing of the Loan, "including but not limited to decisions concerning the security for the Loan, guaranties, acceleration, foreclosure, acquisition of other security or guaranties, deficiency judgments, purchase at foreclosure sales, and administration and disposition of acquired security."

22. Section 6 further provides that InterBank "will use the same degree of care in servicing and collecting the Loan as it would for its own accounts."

23. Section 6 also expressly limits InterBank's servicing authority. It provides that InterBank "will not reduce principal or interest with respect to the Loan or release or allow for the substitution of any Collateral in a manner that substantially reduces the possibility of repayment without the Purchaser's consent," and that InterBank "will not renew, extend, or consent to the adverse revision of the provisions of the Note or other Loan Documents or waive any claim against Borrower without the Purchaser's written consent."

24. Section 9.A of the 2017 Participation Agreement provides that all Loan Documents are available at InterBank's office for Bank First's inspection and copying, and that InterBank "will from time to time provide Purchaser with complete and current credit information regarding the following: status of accrual under the Loan, principal and interest payments, financial statements, property values and liens and any factual information bearing on the Borrower's continuing credit worthiness." Section 9.G requires InterBank to "promptly notify" Bank First should InterBank receive actual notice or knowledge of any loss of the Collateral or change in the financial condition of any party obligated under the Loan Documents that could have a material, adverse effect on repayment of the Loan.

25. Section 4 of the 2017 Participation Agreement provides that no administrative fee is payable to InterBank and that InterBank "will bear all costs of administering and servicing the Loan." Section 3 provides that Expenses, as defined in the agreement, are to be allocated pro rata between InterBank and Bank First and deducted from Collections, and that Bank First's pro rata share of Collections is to be distributed to Bank First within ten days of clearance. Section 10 provides that if InterBank fails to remit sums due to Bank First in a timely manner, InterBank shall pay Bank First interest and late fees equal to those specified in the Loan Documents.

26. Section 15 of the 2017 Participation Agreement provides that if any party brings an action to enforce the terms of the agreement, the unsuccessful party will pay the prevailing party all of its court costs and reasonable attorney fees. Section 9.L provides that nothing in the agreement limits either party's remedies and that the parties are allowed all remedies provided by law and equity.

**D. <u>InterBank's Servicing Obligations and the Limits on Its Authority Under the 2021 Participation Agreement</u>**

27. Section 2(d) of the 2021 Participation Agreement permits InterBank, prior to a default, to take any action determined by InterBank "in its reasonable sole discretion to be appropriate to administer the Loan and the Loan Documents, to enforce payment of the Loan, or to realize upon any collateral securing the Loan," expressly "subject to Subsection 2(e) below."

28. Section 2(e) of the 2021 Participation Agreement provides that, "notwithstanding anything to the contrary in Subsection 2(d), without the prior written consent of the Participant, which consent shall not be unreasonably withheld or conditioned, Lead shall not," among other things: (ii) release the liability of the Borrower or any guarantor of the Loan; (iii) subordinate, substitute, or release all or substantially all of the collateral securing the Loan; (v) "extend the due date for any payment on the Loan by more than sixty (60) days or extend the maturity date of the Loan"; (vi) "reduce or increase the amount of installment payments of principal and/or interest due under the Loan"; (vii) amend, modify, or waive any financial covenants or covenants related to the provision of financial statements by the Borrower; or (viii) "permanently waive any event of default under the Loan Documents." Any other action InterBank takes with respect to the Loan must be taken "in its reasonable sole discretion" and only as InterBank "deems prudent."

29. Section 2(f)(i) of the 2021 Participation Agreement requires InterBank to "promptly notify Participant of any event of default that occurs and continues beyond any

applicable notice and cure period under the Loan Documents of which Lead has actual knowledge."

30. Section 2(b) of the 2021 Participation Agreement requires InterBank to "promptly provide Participant with copies of the Loan Documents and all material notices and correspondence between Lead and the Borrower pertaining to the Loan, including, without limitation, copies of any financial statements and compliance certificates received by Lead," and, upon request, to provide or make available for inspection the Loan Documents, information regarding the current status of principal and interest payments and accruals, all financial statements of the Borrower and any guarantor in InterBank's possession, and other current financial information bearing on the continuing creditworthiness of the Borrower.

31. Section 2(a) of the 2021 Participation Agreement requires InterBank to remit to Bank First its pro rata share of any payment on the Loan within two business days of receipt. Section 2(h) requires that payments made by or for the account of the Borrower be applied first to accrued interest, second to unpaid principal, and third to unreimbursed expenses and fees.

32. Section 11(h) of the 2021 Participation Agreement provides that, in the event an action or claim is brought for breach of the terms and conditions of the agreement, the non-breaching party shall be entitled to recover from the breaching party its costs and disbursements, including reasonable attorney's fees.

33. Because InterBank, as holder of the majority interest in the First Note and the lead on both Loans, controls the day-to-day servicing of the Loans and holds the Loan Documents, the consent covenants in Section 6 of the 2017 Participation Agreement and Section 2(e) of the 2021 Participation Agreement are Bank First's principal contractual protection against unilateral action

by InterBank that prolongs Bank First's exposure on matured and defaulted Loans. Those covenants were a material inducement to Hometown Bank's purchase of the Participation Interests.

## E. The Borrower Parties' Default and the Maturity of the Loans

34. The Borrower Parties defaulted on the Loans. InterBank and the Borrower Parties executed a Forbearance Agreement dated September 30, 2024 (the "**First Forbearance Agreement**"). The forbearance period under that agreement expired on February 28, 2025.

35. The Loans matured on July 30, 2025. The Borrower Parties did not pay the outstanding principal balance of the First Note and the Second Note, or the accrued but unpaid interest thereon, on the maturity date.

## F. The Second Forbearance Agreement and Its Expiration

36. InterBank and the Borrower Parties executed a Second Forbearance Agreement with an effective date of July 30, 2025 (the "**Second Forbearance Agreement**"). The Second Forbearance Agreement was executed on behalf of InterBank on or about September 4, 2025. By its express terms, the forbearance period ran only until January 31, 2026.

37. The Second Forbearance Agreement imposed specific, dated performance requirements on the Borrower Parties, including required principal reduction payments and other performance obligations to be satisfied by dates certain before the forbearance period expired.

38. The Borrower Parties failed to satisfy those requirements. InterBank has itself acknowledged, in the recitals to the Third Forbearance Agreement described below, that the Borrower Parties "failed to comply with all of the requirements of the First Forbearance Agreement and the Second Forbearance Agreement" and failed to make payments when due "before and during the First Forbearance Period" and "before and during the Second Forbearance Period." The Borrower Parties were therefore in default under the Second Forbearance Agreement

well before that agreement expired on January 31, 2026—a default that, under Section 2.02 of that agreement, entitled InterBank to immediately terminate the forbearance period and exercise all rights and remedies under the Loan Documents. InterBank did not do so.

39. Consistent with the Participation Agreements, before entering into each of the First Forbearance Agreement and the Second Forbearance Agreement, InterBank provided the proposed agreement to Bank First and sought Bank First's approval before executing it.

**G. <u>The Loans Were Left Undocumented and Unenforced for More Than Eight Months</u>**

40. The forbearance period under the Second Forbearance Agreement expired on January 31, 2026. From that date until October 2026—a period of more than eight months—the Loans were matured, in default, and governed by no operative forbearance, modification, restructuring, or workout documentation of any kind.

41. During that period, InterBank did not accelerate the Loans in any manner disclosed to Bank First, did not post the Texas real property Collateral for non-judicial foreclosure under Chapter 51 of the Texas Property Code, did not commence any action against the Guarantor on either of the Guaranties, did not seek the appointment of a receiver, and did not dispose of any personal property Collateral under the Uniform Commercial Code. InterBank has not, at any time since the Loans matured on July 30, 2025, taken any enforcement action against the Borrower Parties or the Guarantor.

**H. <u>The Collapse of the Borrower Parties' Payment Performance</u>**

42. Bank First's participation records reflect that, over a period exceeding one year, Bank First received only three regular payments attributable to its Participation Interests in the Loans, each of which consisted of interest only.

43. The only meaningful principal reductions during this period resulted not from the Borrower Parties' operations but from a partial liquidation of Collateral. Principal payments were applied to Bank First's Participation Interests in connection with a sale of Collateral and a corresponding Partial Release of Deed of Trust and Lien(s) dated effective February 11, 2026, and recorded under Instrument No. 2600604 in the records of Montague County, Texas (the "**Partial Release**").

44. The practical effect is that InterBank permitted the Borrower Parties to remain in possession of the remaining income-producing Collateral for more than a year after maturity while making only sporadic interest payments, and permitted the release of Collateral from InterBank's lien following a partial liquidation, without otherwise enforcing the Loan Documents.

45. Accrued unpaid interest on each of the Loans grew substantially between the July 30, 2025 maturity date and the effective date of the Third Forbearance Agreement—the very period in which InterBank declined to enforce. Loan charges and fees assessed on the Loans also increased, and InterBank has not provided Bank First with any itemization of those charges and fees.

## I. InterBank Executes the Third Forbearance Agreement Without Bank First's Consent

46. In or about September 2026, InterBank circulated to Bank First a draft Third Forbearance Agreement with a proposed effective date of September 7, 2026. The draft provided for a forbearance period of approximately six months, through March 7, 2027, and would have required the Borrower Parties to make substantial monthly payments of a kind the Borrower Parties had not made at any time in the preceding year.

47. Bank First objected to the proposed draft Third Forbearance Agreement and informed InterBank that Bank First did not consent to a further forbearance. Bank First requested

that InterBank instead enforce the Loan Documents and requested InterBank's written analysis supporting any further forbearance. InterBank declined to provide that analysis.

48. Nonetheless, on October 8, 2026, InterBank, the Borrower Parties, and the Guarantor executed a Third Forbearance Agreement with a stated effective date of September 7, 2026 (the "**Third Forbearance Agreement**").

49. The Third Forbearance Agreement as executed differs materially from the draft InterBank had circulated to Bank First. Among other things, the executed agreement extends the forbearance period through October 7, 2027—thirteen months from its effective date, more than twice the length of the draft, and more than twenty-six months after the Loans matured. Bank First was not provided with the executed version, or informed of the extended forbearance period, before InterBank signed it.

50. InterBank never delivered to Bank First a written proposal requesting Bank First's consent to the Third Forbearance Agreement. At no time did Bank First consent, in writing or otherwise, to the Third Forbearance Agreement, and InterBank at all relevant times knew that Bank First did not consent.

51. Under the Third Forbearance Agreement, among other things: (a) InterBank "agrees to forbear from attempting to collect on the Loans during the Forbearance Period" (Section 1.08), which runs through October 7, 2027 (Section 1.07); (b) the Borrower Parties are required to make specified monthly payments through October 7, 2027 (Schedule 3); (c) the agreement's effectiveness was conditioned on a specified initial payment by the Borrower Parties, which InterBank may apply "in such amounts, if any, and in such order, all as determined by Lender in its sole and absolute discretion" among interest, principal, and "any other amounts payable to Lender" (Section 1.10(d)); (d) InterBank, in its "sole and absolute discretion," may approve sales

of all or any portion of the Collateral and release its lien on the Collateral sold in exchange for a "Partial Release Amount" determined by InterBank alone (Schedule 3); and (e) all applicable statutes of limitations with respect to enforcement of the Loan Documents are tolled through the end of the forbearance period (Section 3.08).

52. The Third Forbearance Agreement makes no provision for any enforcement action against the Guarantor, for the appointment of a receiver, for any orderly liquidation of the Collateral, or for any consequence to the Borrower Parties for their admitted defaults under the First Forbearance Agreement and the Second Forbearance Agreement beyond a renewed promise to pay.

53. By entering into the Third Forbearance Agreement, InterBank: (a) renewed and extended its forbearance from enforcement of the Loan Documents; (b) extended the due date for payment of the amounts that came due upon the Loans' July 30, 2025 maturity by far more than sixty days—indeed, by more than two years; (c) established new monthly installment payment obligations of principal and interest; (d) consented to the revision of the provisions of the Loan Documents, including the provisions governing the application of payments and the release of Collateral; and (e) agreed to refrain from asserting, for a period of thirteen months, InterBank's claims and remedies against the Borrower Parties and the Guarantor arising from existing and admitted defaults. Each of those actions required Bank First's written consent under Section 6 of the 2017 Participation Agreement, and each of them required Bank First's prior written consent under Section 2(e) of the 2021 Participation Agreement.

54. By letter dated October 14, 2026, InterBank informed Bank First for the first time that the Third Forbearance Agreement had been executed. The letter asserted that "under Section 6 of the First Participation Agreement and Section 2 of the Second Participation Agreement, Lead

is authorized to make all decisions concerning the servicing of the Loans," and that InterBank had executed the Third Forbearance Agreement "[i]n accordance with such authority." The letter did not assert that Bank First had consented to the Third Forbearance Agreement, did not acknowledge the consent requirements of Section 6 of the 2017 Participation Agreement or Section 2(e) of the 2021 Participation Agreement, and did not explain why InterBank had not complied with them.

55. The October 14, 2026 letter further stated that InterBank had wired to Bank First its pro rata share of the condition-precedent payment on October 9, 2026. Bank First was entitled under both Participation Agreements to its pro rata share of every payment received on the Loans, irrespective of the Third Forbearance Agreement. Bank First's receipt of funds to which it was already entitled does not constitute consent to, ratification of, or waiver of its objections to the Third Forbearance Agreement, and Bank First has expressly reserved all of its rights.

56. InterBank's execution of the Third Forbearance Agreement was knowing, intentional, and in conscious disregard of Bank First's contractual rights. InterBank drafted or negotiated the consent provisions of the Participation Agreements; had, on prior occasions, sought Bank First's approval before entering into forbearance agreements; knew that Bank First objected to and did not consent to a third forbearance; proceeded to execute the agreement on materially expanded terms that it never disclosed to Bank First; and withheld disclosure of the executed agreement until after the fact. InterBank's conduct constitutes bad faith and willful misconduct within the meaning of the Participation Agreements.

57. InterBank has provided Bank First with no written analysis or explanation supporting its conclusion that a third forbearance—on terms requiring monthly payments of a kind the Borrower Parties have repeatedly failed to make—would succeed where the first two forbearances failed. InterBank has declined Bank First's requests for its internal written analysis

supporting its forbearance decisions, and has not provided Bank First with current financial statements of the Borrower Parties or the Guarantor, current appraisals or valuations of the Collateral, or other information bearing on the Borrower Parties' continuing creditworthiness that Bank First is entitled to receive under Section 9.A of the 2017 Participation Agreement and Section 2(b) of the 2021 Participation Agreement.

## V. CLAIMS FOR RELIEF

### COUNT I
### Breach of Contract — 2017 Participation Agreement (Consent to Forbearance)

58. Bank First incorporates by reference each of the preceding paragraphs as though fully set forth herein.

59. The 2017 Participation Agreement is a valid and enforceable contract between InterBank and Bank First, as successor by merger to Hometown Bank. Bank First has performed all conditions, covenants, and obligations required of it under the 2017 Participation Agreement, including payment of the full purchase price for its Participation Interest.

60. Section 6 of the 2017 Participation Agreement prohibits InterBank from renewing, extending, or consenting to the adverse revision of the provisions of the Note or other Loan Documents, or waiving any claim against the Borrower, without Bank First's written consent.

61. InterBank breached Section 6 of the 2017 Participation Agreement by executing the Third Forbearance Agreement without Bank First's written consent, over Bank First's objection, and without delivering to Bank First a written proposal with respect thereto as Section 6 requires.

62. InterBank further breached Section 6 by agreeing, in the Third Forbearance Agreement, to a mechanism under which InterBank may, in its "sole and absolute discretion," release Collateral from its lien in exchange for Partial Release Amounts determined by InterBank

alone, without regard to Bank First's right under Section 6 to consent to any release of Collateral in a manner that substantially reduces the possibility of repayment.

63. InterBank's breaches were committed knowingly, intentionally, and in bad faith, and constitute willful misconduct. The limitation of liability in Section 6 of the 2017 Participation Agreement, which excepts InterBank's bad faith and willful misconduct, therefore affords InterBank no protection. In any event, that limitation addresses InterBank's exercise of judgment in servicing decisions committed to it; it does not excuse InterBank's breach of the express negative covenants of Section 6, which carve those decisions out of InterBank's servicing authority altogether.

64. As a direct and proximate result of InterBank's breaches, Bank First has suffered damages in an amount to be proven at trial, and is entitled under Section 15 of the 2017 Participation Agreement to recover its court costs and reasonable attorney fees.

**COUNT II**
**Breach of Contract — 2021 Participation Agreement (Consent to Forbearance)**

65. Bank First incorporates by reference each of the preceding paragraphs as though fully set forth herein.

66. The 2021 Participation Agreement is a valid and enforceable contract between InterBank and Bank First, as successor by merger to Hometown Bank. Bank First has performed all conditions, covenants, and obligations required of it under the 2021 Participation Agreement, including payment of the full purchase price for its Participation Interest.

67. Section 2(e) of the 2021 Participation Agreement prohibits InterBank, without Bank First's prior written consent, from extending the due date for any payment on the Loan by more than sixty days or extending the maturity date of the Loan; from reducing or increasing the amount of installment payments of principal and/or interest due under the Loan; from amending,

modifying, or waiving financial covenants or covenants relating to the provision of financial statements; from releasing the liability of the Borrower or any guarantor; and from permanently waiving any event of default.

68. InterBank breached Section 2(e) of the 2021 Participation Agreement by executing the Third Forbearance Agreement without Bank First's prior written consent and over Bank First's objection. The Third Forbearance Agreement extends the due date for payment of the amounts that came due on the Loan's July 30, 2025 maturity by more than sixty days; establishes new installment payment obligations; alters the Loan Documents' provisions governing the application of payments; and supersedes and modifies the financial reporting covenants of the Loan Documents.

69. Bank First's consent to the Third Forbearance Agreement was never requested. To the extent InterBank contends that Bank First's consent could not reasonably have been withheld, Bank First's refusal to consent to a third, thirteen-month forbearance on Loans that matured more than a year earlier, to a borrower that had defaulted under each of the two prior forbearance agreements, was reasonable.

70. InterBank's breaches were committed knowingly, intentionally, and in bad faith, and constitute willful misconduct and gross negligence.

71. As a direct and proximate result of InterBank's breaches, Bank First has suffered damages in an amount to be proven at trial, and is entitled under Section 11(h) of the 2021 Participation Agreement to recover its costs and disbursements, including reasonable attorney's fees.

**COUNT III**
**Breach of Contract — 2017 Participation Agreement (Servicing)**

72. Bank First incorporates by reference each of the preceding paragraphs as though fully set forth herein.

73. InterBank breached Section 6 of the 2017 Participation Agreement by failing to use the same degree of care in servicing and collecting the Loan as it would use for its own accounts.

74. No reasonable lender servicing a matured, defaulted, multi-million dollar commercial loan for its own account would, after the borrower defaulted under two successive forbearance agreements, permit that loan to remain wholly undocumented and unenforced for more than eight months following the expiration of the second forbearance period while accepting sporadic interest-only payments; decline to exercise the expedited non-judicial foreclosure remedy available under Chapter 51 of the Texas Property Code; decline to pursue the Guarantor; decline to seek the appointment of a receiver; and then commit to a further thirteen months of forbearance on terms requiring monthly payments of a kind the borrower had repeatedly failed to make.

75. InterBank further breached Section 6 by failing to make and implement reasonable decisions concerning acceleration, foreclosure, deficiency judgments, the Guaranties, and the administration and disposition of the security—matters expressly committed to InterBank's servicing responsibility under Section 6—and by instead electing, repeatedly, to do nothing.

76. InterBank further breached Sections 9.A and 9.G of the 2017 Participation Agreement by failing to provide Bank First with complete and current credit information regarding the Borrower Parties and the Collateral, including current financial statements, property values, and factual information bearing on the Borrower Parties' continuing creditworthiness; by failing to provide timely notice of material adverse changes bearing on repayment of the Loan; and by declining to provide Bank First with its written analysis supporting its forbearance decisions.

77. InterBank's failures were not mere errors in judgment. They were made knowingly, in conscious disregard of Bank First's rights and interests, and in bad faith, and constitute willful misconduct within the meaning of Section 6 of the 2017 Participation Agreement.

78. As a direct and proximate result of InterBank's breaches, Bank First has suffered damages in an amount to be proven at trial, and is entitled under Section 15 of the 2017 Participation Agreement to recover its court costs and reasonable attorney fees.

**COUNT IV**
**Breach of Contract — 2021 Participation Agreement (Servicing)**

79. Bank First incorporates by reference each of the preceding paragraphs as though fully set forth herein.

80. Under Sections 2(d) and 2(e) of the 2021 Participation Agreement, InterBank's authority to administer the Loan, to enforce payment of the Loan, to realize upon the collateral, and to exercise or decline to exercise remedies under the Loan Documents is limited to actions taken in InterBank's "reasonable sole discretion" and as InterBank "deems prudent."

81. InterBank breached Sections 2(d) and 2(e) of the 2021 Participation Agreement by failing to exercise reasonable discretion in administering and enforcing the Loan. No reasonable or prudent lender would, after the borrower defaulted under two successive forbearance agreements, permit a matured and defaulted loan to remain wholly undocumented and unenforced for more than eight months while accepting sporadic interest-only payments, decline to pursue any remedy against the Borrower Parties or the Guarantor, and then commit to a further thirteen months of forbearance.

82. InterBank further breached Section 2(b) of the 2021 Participation Agreement by failing to provide Bank First with copies of all material notices and correspondence between InterBank and the Borrower Parties pertaining to the Loan, with financial statements and

compliance certificates received from the Borrower Parties, and with current financial information bearing on the Borrower Parties' continuing creditworthiness, and by failing to provide the executed Third Forbearance Agreement until after the fact. InterBank's failures in this regard were willful and grossly negligent.

83. InterBank further breached Section 2(f)(i) of the 2021 Participation Agreement by failing to promptly notify Bank First of events of default under the Loan Documents of which InterBank had actual knowledge, including the Borrower Parties' defaults under the First Forbearance Agreement and the Second Forbearance Agreement.

84. On information and belief, InterBank has further breached Sections 2(a) and 2(h) of the 2021 Participation Agreement by failing to remit to Bank First its pro rata share of payments received on the Loan within two business days of receipt, and by applying or agreeing to apply payments received on the Loan in a manner other than that required by Section 2(h).

85. As a direct and proximate result of InterBank's breaches, Bank First has suffered damages in an amount to be proven at trial, and is entitled under Section 11(h) of the 2021 Participation Agreement to recover its costs and disbursements, including reasonable attorney's fees.

**COUNT V**
**Declaratory Judgment — Wis. Stat. § 806.04**

86. Bank First incorporates by reference each of the preceding paragraphs as though fully set forth herein.

87. An actual, justiciable controversy exists between Bank First and InterBank concerning their respective rights and obligations under the Participation Agreements. InterBank contends, as stated in its October 14, 2026 letter, that the Participation Agreements authorize it to make all decisions concerning the servicing of the Loans, including the decision to execute the

Third Forbearance Agreement without Bank First's consent. Bank First contends that the Participation Agreements prohibit InterBank from doing so.

88. The controversy is ripe. The Third Forbearance Agreement has been executed and, by its terms, governs InterBank's administration of the Loans through October 7, 2027. InterBank will, during that period, incur expenses and make decisions regarding the application of payments and the release of Collateral under the authority it claims, and will seek to charge Bank First with its pro rata share of those expenses. Bank First's rights, status, and legal relations under the Participation Agreements are directly affected.

89. Bank First is entitled to a declaration, pursuant to Wis. Stat. § 806.04, that: (a) InterBank executed the Third Forbearance Agreement in breach of Section 6 of the 2017 Participation Agreement and Section 2(e) of the 2021 Participation Agreement; (b) the Third Forbearance Agreement does not bind Bank First or its Participation Interests, does not alter Bank First's rights under the Participation Agreements, and does not authorize InterBank to release Collateral, apply payments, or take other action affecting Bank First's Participation Interests in any manner not permitted by the Participation Agreements; (c) Bank First is not obligated to reimburse InterBank for, and InterBank may not deduct from Collections or otherwise charge to Bank First, any Expenses, Collection Costs, or other costs incurred in negotiating, executing, administering, or performing the Third Forbearance Agreement; and, (d) InterBank may not further renew, extend, or modify the Loan Documents, extend any payment or maturity date, forbear from the exercise of its remedies, or waive any default or claim against the Borrower Parties or the Guarantor without first obtaining Bank First's written consent in accordance with the Participation Agreements.

90. A declaratory judgment will terminate the uncertainty and controversy giving rise to this proceeding.

**COUNT VI**
**Accounting**

91. Bank First incorporates by reference each of the preceding paragraphs as though fully set forth herein.

92. InterBank has at all times held custody of the Loan Documents, maintained the books and records pertaining to the Loans, and controlled the receipt, application, and distribution of all Collections, Expenses, and Collection Costs. The information necessary to determine the amounts due to Bank First is peculiarly within InterBank's possession and control, and Bank First has no adequate means of ascertaining it other than through an accounting.

93. Bank First is entitled, under the Participation Agreements and in equity, to a full and complete accounting of: (a) all sums received by InterBank on account of the Loans from the Borrower Parties, the Guarantor, or any other source, and the date of receipt of each; (b) the application of all such sums as between principal, interest, fees, charges, and expenses on each of the Loans, including the application of the condition-precedent payment made under the Third Forbearance Agreement and each monthly payment made thereunder; (c) the dates and amounts of all remittances to Bank First, and the computation of each; (d) all Expenses, Collection Costs, and other costs charged or allocated to the Loans or to Bank First, including an itemization of all "loan charges and fees" reflected on Schedule 2 to the Third Forbearance Agreement; (e) all proceeds of any sale, partial release, or other disposition of Collateral, including the transaction giving rise to the Partial Release, and the application of those proceeds; and (f) all amounts remitted or owing to Bank First on account of its Participation Interests.

94. Bank First is further entitled to payment of any amounts shown by such accounting to be due to it, together with interest and late fees as provided in Section 10 of the 2017 Participation Agreement and interest as provided by law.

## VI. RELIEF REQUESTED

WHEREFORE, Plaintiff Bank First, N.A. respectfully demands judgment against Defendant InterBank as follows:

(a) Awarding Bank First compensatory damages against InterBank in an amount to be proven at trial;

(b) Declaring the rights of the parties as set forth in Count V, including that InterBank executed the Third Forbearance Agreement in breach of the Participation Agreements; that the Third Forbearance Agreement does not bind Bank First or its Participation Interests; that Bank First is not obligated to bear any expenses of the Third Forbearance Agreement; and that InterBank may not further extend, modify, forbear, or waive without Bank First's written consent;

(c) Ordering a full and complete accounting as described in Count VI, and awarding Bank First all amounts shown by such accounting to be due to it;

(d) Ordering InterBank to specifically perform its obligations under Section 9.A of the 2017 Participation Agreement and Section 2(b) of the 2021 Participation Agreement by making the Loan Documents available for inspection and copying and by providing Bank First with complete and current credit information regarding the Borrower Parties, the Guarantor, and the Collateral;

(e) Awarding Bank First its reasonable attorneys' fees, costs, and disbursements pursuant to Section 15 of the 2017 Participation Agreement, Section 11(h) of the 2021 Participation Agreement, and applicable law;

(f) Awarding Bank First its statutory costs and disbursements pursuant to Wis. Stat. ch. 814;

(g) Awarding prejudgment and post-judgment interest at the maximum rate allowed by law, including interest and late fees pursuant to Section 10 of the 2017 Participation Agreement; and

(h) Granting such other and further relief as the Court deems just and equitable.

Dated this 19th day of October, 2026.

AXLEY LLP

*Electronically signed by David M. Pelletier*
David M. Pelletier
State Bar #1072343
Attorneys for Plaintiff
2 East Mifflin Street
Post Office Box 1767
Madison, Wisconsin 53701-1767
(608) 260-2495
dpelletier@axley.com